to please the court my name is John Scott I represent the appellant Susan Lew in this matter first of all your honors I would like to remind the court this is an appeal from an order granting a motion for summary judgment and under rule 56 C inferences are to be drawn in favor of the non-moving party counsel help help me with something on this case when I read the record it looked to me as though there was a genuine issue of fact about whether she was a good staff attorney or a bad staff attorney but it's not material what's material is whether she was fired because of her age her race her sex or retaliation that was improper some retaliation is okay some isn't if it was improper retaliation it looked to me as though there was no genuine issue on those things that was made out by the evidence I could see nothing whatsoever to show that she was fired on account of her age or her race or her sex and and so forth so even if they were wrong the judges who thought that she had an integrity problem or competence problem even if they were totally wrong and unjustified in their views I can't see where their their reasons would be pretextual in the absence of any evidence that she was fired for any of those things well help me on that thank you I'd be happy to there are three claims here your honor there's a FMLA claim that has no intent requirement at all which I'd like to discuss there's a state law wrongful termination and violation of public policy claim which has to do the fact that she ran for judge that has nothing to do with with race or gender wait a minute if they there was a judge who said she had a really bad memo and then when he was talking on the phone he got a phone call she snuck a good memo into his file and removed the bad memo without permission that was the integrity problem and was he alleged to fire her or caused her to be fired for that no he did not that would not give rise to any of those claims would it well he he did not participate at all in the decision to terminate her it was not his idea to terminate her he wasn't asked if he wanted her terminated and he didn't participate in that decision number one number two it was in my opinion drawing inferences in Ms. Liu's favor this was really a relatively trivial insignificant matter of which if the jury could easily look at it as just a misunderstanding in terms of of whether it was appropriate for her to switch memos she but it would be if if the jury accepted her view it would be an innocent misunderstanding yes which on summary judgment you should be drawing inferences in her favor but the most important point your issue on this issue your honor is judge Warren had nothing to do with her termination did not ask that she be terminated was not consulted regarding the decision he had nothing to do with the termination in part he was supporters all he did was report that this event happened well yes and as some and it strikes me it doesn't really matter if it was innocent in her mind what matters is if it was innocent in his but but he didn't I'm let's assume that's true he didn't make the decision to terminate her he didn't make that decision so if he didn't make the incident did have an impact on whether or not she was terminated well in the case of the it impacted it was another reason used by people who were already out to get her well somebody tells me that somebody works for me has done something dishonest but the person who tells me says now I'm not responsible for hiring or firing or anything like that and I don't want any responsibility and I'm not telling you what you should do about it I'm just telling you there was somebody works for you did something dishonest and then I fire them you're saying that the dishonesty is not a cause of the firing because the person who told me about it and didn't do the firing what what I'm saying is that there's two ways to look at it and if you want to look at it that way you can but if you're drawing inferences in favor of Miss Lou seems to me a jury should decide that number one was she dishonest number two was it was it in fact a reason that she was terminated wait I don't understand why a jury would decide was she dishonest the question is was she discriminated against yes and if she's fired because the employer has an incorrect belief that she's dishonest this happens sometimes an employee in a retail store gets fired for stealing from the cash register and was actually framed by another employee who stole from the first one's register it happens sometimes B steals from A's register and gets A fired the employer isn't discriminating against A on account of race or sex or anything the employers doing something unjust without knowing it because B successfully framed A well I don't understand why A's honesty matters to the jury well your honor let me put this in context I understand your point but I think you're making it out of context they were meeting Judge Dondero and Judge Kramer were meeting with others back in December January to discuss setting this woman up for termination this alleged and they had set it up they had billed a file on her during January February and March to terminate her before she was ever transferred to Judge Warren which we believe was another act to set her up to fail counsel you keep saying that they were out to get her and that they were setting her up now I didn't find anything in the record that would support that now what do you have because that's critical to the case and if you can't support it in the record you've got nothing well I agree and I'd be happy to address that let's start with the fact that it was Judge Kramer who moved her into the appellate division in December 2004 the reason he gave was that three years earlier Judge Garcia had made a comment to her about her performance being lacking and he waited three years to put her in a position so she could be evaluated and so that was the and she was by the way the first staff attorney ever evaluated by the Superior Court and the only reason reason given was by Judge Kramer a comment Judge Garcia had made three years earlier in those three years she had worked in the discovery department and in the probate department she wasn't asked to be evaluated in those assignments and her performance was satisfactory in those assignments so then Judge Garcia was asked about that comment did he in fact make a comment to Judge Kramer that he was not satisfied or had questions about her competence her performance Judge Garcia denied ever making such a comment to Judge Kramer so now we have a credibility issue did Judge Kramer make up a reason and and further there was an issue in that essentially same conversation Judge Kramer when he was talking to Judge Garcia mentioned that he was concerned that Judge Garcia was supporting her in the election was backing her as a candidate according to Judge Garcia Judge Kramer said to him where's the effect that he was upset that Judge Garcia was supporting Susan Lou because it would make it more difficult for the court to terminate her in the future now the jury's now this is a classic credibility dispute Judge Kramer denies that he made that statement Judge Garcia says he did make that statement well if Judge Kramer I lost the thread of how it bears on that well if Judge Kramer was upset about the fact that she was running for judge was upset about the fact that Judge Garcia was backing her for judge and With whose concerns judge Kramer yes okay that would be let me find it for your honor that would That I believe Yes It's referred to I believe at pages 12 and 13 my opening brief and and the references would be to At least there at judge Kramer's Testimony at the references would be at ER 1685 through 87 and Then if you Give me a moment because I know this is referred to extent extensively through both the opening brief and the reply brief It would take me a moment perhaps when I take my break I could come back and give you the exact Judge Testimony, I apologize. I don't have it at the tip of my tongue But it seems to me there's another another issue and and the issue of judge Kramer is compounded by the fact That there's a significant Dispute between his testimony judge Dierman judge Kramer I thought judge Warren wanted to get rid of her because he thought her work was no good and he didn't trust her Judge Kramer looked over the work that she had given a judge Warren and thought it was incompetent and judge Kramer recommended firing her and it was done because of unacceptable work performance and loss of trust and I'm having trouble Tying any of this to the discrimination claims that it was because she was female or Asian or Whatever age she was I can't remember or any of that Well your honor and actually to set this thing up I think judge Baya, who's a colleague of yours helps put this claim in context Judge that position testimony was funny. He says Republicans and males were scarce and ran scared in elections, but She's not male. She's Not not Republican. I I don't get it. Well, the Republicans were afraid of Democrats and she's a Democrat Number one judge Kramer's a Republican judge Kramer wasn't in in some of these celebratory More you're saying it was a purge of Democrats. I'm sorry. Are you suggesting it was a purge of Democrats? No, what I'm suggesting is that in a city that has only 11 or 12 percent registered Republicans if you're appointed a Republican judge You you according to judge Bayan it makes sense You're going to be concerned that you that you may be His word his term was picked off by a Democrat who may decide to run against you and in a town That is predominantly Democratic in addition to that. There's a phenomenon of Asian identity voting Was she running against one of the judges that fired her? No, she did not run against the judge who fired her But there that was the potential that I keep losing the thread. There was the potential that she would in the future That was that was the concern Your honor's actual that anybody will run against but she had already run and came very close to winning So it's not it's not just as she might she had she came in third Yes, but the person who came in second who beat her bike by two percentage points ended up winning in the runoff and And the record here is that because of Asian identity voting if she had got that more 2% and this was all Democrats She was one of three Democrats who were running against each other for an open seat Are you saying So you're not saying she was discriminated against. Oh, I think I know what you're saying. You're saying it was a Republican conspiracy against Asian female Democrats staff because they might eventually win and Then be running it. I know I keep losing it. Well, there was your honor I'd like to save a minute, but I'm nobody's saying there's conspiracy There's a judge who admittedly was upset that she ran and and who expressed that to a judge Garcia Who who manipulated the process but it seems to me and forgive me for making this point The FMLA claim in my opinion is very strong and very straightforward does not require intent and and I would encourage the court to look at the FMLA claim and Instead of being highly skeptical of one of three claims the discrimination claim And if you want to be skeptical about it, that's fine. But the FMLA claim here I believe is very strong and and deserves your consideration. Thank you. Thank you You May please the court Greg Richardson for San Francisco Superior Court your honors I wanted to first address the evidence of Republican bias here just to point out that the only evidence Other than miss Lou being a Democrat is that judge Baya held? Cocktail parties celebratory cocktail parties for the Republican judges now by that You know by any inference that is to be drawn by that we would expect judge Baya to to be discriminatory But judge Baya actually endorsed her election. He supported her as I recall exactly, right? so there's no evidence of Republican bias and I would also point out if you know celebratory parties were evidence of Discrimination then, you know, we would have expected many Republicans to be terminated in November and be able to bring be able to bring suit That's that's there's no evidence here. I'd also like to address judge Fletcher's question regarding any evidence setting up to fail There is no evidence in the record that That the court set her up to fail at all. First of all, he cites testimony Stating that the position was created based solely on on this Conversation with judge Garcia in 2002. That's not actually what the record holds Okay, the record first of all states and I can provide your honors with actual page numbers The record first of all states that the reason the position was created was for business reasons There were budget cuts that were coming. They wanted to move Research attorneys the floaters to cover other places, right? That is that is judge that's judge Kramer's declaration on page 1511 And then we look to the pages and it's 1685 through 87 and in the record that was addressing judge Fletcher Here's what he actually says when asked the question. Why did you place her in this position? What he says is I had had complaints Well, first of all, what he says is I've been thinking about creating this position for a long time. So that's undisputed He didn't create the position for Miss Liu. He said Miss Liu Or rather, let me step back one second. It's also undisputed that Miss Liu Requested not to be a floater. Okay, that's that's undisputed. That is judge Hitchens Judge just judge Hitchens testimony and that is not disputed by plaintiff So she asked not to be a floater. So they placed her in this position judge judge Kramer did actually state that he had had complaints about her performance from judge Garcia and Discovery Department, that's on page 1687 of the record. So it wasn't just judge Garcia now I'd like to talk about the judge Garcia testimony that that appellants rely so much upon first of all Credibility issues aside. I think it's immaterial because it occurred three years prior and here's what the comment was The comment according to both of them was something to the effect that I how can you support her? This will make it difficult for us to terminate her for performance reasons Okay, if that's actually the testimony then what that would establish is what you know the judge Kramer back in 2002 Believed that she had performance reasons doesn't establish that he was angry that she was running for office He was angry at judge Garcia for endorsing her according to that inference And if you also look at the testimony of judge Garcia judge Garcia does say that he never called her incompetent But here's what's undisputed they both state both judge Kramer and judge Garcia state or right judge Garcia state that Judge Garcia had said that miss Lou could not Handle all the duties in the law in motion So what judge Garcia says is well what I meant by that is she was only assigned here part-time I needed more help what judge Kramer takes from that if you read the record is that she's incompetent Okay I mean so there's there isn't there's it's undisputed at most that there is there's a confusion So that's actually the record of being set up. I'd also like to to go to Because that's what counsel is ended with saying that he feels that that is the biggest claim here First of all, it is wrong to say the FEMLA does not it's not an intentional statute It is in fact an intentional statute if what counsel this is leaving because her the the idea that she was fired for Asking for family leave or leave because her husband was Sick or dying that that is correct And they also raise points that we weren't allowed to transfer her which I I will address FEMLA is an intentional statute. I mean this this court actually says that You know that you have to actually the plaintiff has to prove that the protected leave Constituted a negative factor in in whatever adverse employment action. He is correct that it's not an animus based statute Okay, and so the case is from this circuit for instance the batch elder case States in that in that particular case The employee was terminated because the employer believed that her leave was not protected So there was no animus under the statute But it was certainly there was intent the employee was terminated because she took protected leave They were just wrong about that so what you're saying here is there's no evidence that her asking for getting any leave to Take care of her husband had anything to do with the termination. That is absolutely correct. That's absolutely correct There is no there is no ever to happen three months There's termination occurred three months within three months of the time that she asked What took off the last time right? I didn't hear the last part of your question or took off the last time She does so judge Breyer below did say if reading it most favorably the one piece of evidence She has is timing. However, it's not enough and let's look at the undisputed facts here Okay prior to she says she first raises this December 10th 2004 however in November 18th She is actually already told she's going to be transferred into the appellate division Between that time and December 10th There are multiple conversations between the four judges on the appellate division and the presiding judges saying we don't think miss lose Work is up to par. They have multiple conversations with her Indeed, they're having that conversation with her on December 10th When she goes and says that when she now states that she first requested leave So the performance issues predated any requests for leave and they actually post dated The request for leave but here's the other thing to remember about the family medical leave act. It's not an affirmative action statute It's not an affirmative action statute. It's not a reasonable accommodation statute You are no greater. You have no greater protection than any other employee Who hasn't taken leave apart from the ability to take leave? Meaning that I can terminate people who are on leave who have requested to leave for performance reasons I just can't factor in their intermittent leave here. There's no evidence the evidence from the judges is performance-based and I would actually also take issue judge Klinefeld if I may with With your initial question to to opposing counsel that there's a maybe a disputed issue of fact as to performance I don't think there is a disputed issue of fact as to performance. She doesn't contend other than computer breakdowns You know changes in format that she was actually not performing to the judge's expectations She says look it was a new position. I didn't know criminal law, but she doesn't actually I mean, this is what every employee says when presented with with criticism, right? It's it's human nature But there is no disputed issue of fact I don't think that the performance reasons or performance issues were actually she didn't say I was doing a great job It was just politics that they got me She did but that doesn't create That doesn't create a disputed issue of fact as to performance and I believe it's the Cornwell case That is is cited to this court that says an employee's subjective opinion of their own performance is not evidence of Pretext. So if the question is did she dispute that she was a bad performer? Yes, she's disputed She's a bad performer, but it's not a material dispute and it's not and it's not a credible dispute So the other thing I'd like to point out in terms of the family medical leave act So they talked about transfer as I said And and I believe they're briefed by the by the reply states the the opening brief What they should have done is placed her in a position. That was was less stressful for her I would point out that they've abandoned that in reply. It's also this leave was for her husband and I'm not saying that Taking care of family family member is actually not a stressful thing I presume it was stressful, but the all the family requires is That that she be given leave for that and she not be punished for that and there's she was And there's no evidence that she was punished for it It's not as if she dropped a note down saying from her doctor. I'm too stressed now What I need is a different position. I need reduced Etc in my position. There's no evidence of that. The only evidence is she placed down a request to take intermittent leave There there's no evidence There was nothing in any of the Papers or discussions relating to a fire and saying she takes too much leave There was absolutely nothing if you look at the declarations of each of the judges and this is uncontested They all state that none of this that did not play a factor in their mind And in fact judge Warren the evidence is in the record and his deposition in emails in the record Anytime she requested leave he said go ahead and take it It had nothing to do with whether she could do legal research and writing Which is what his issue was with her and the other thing with the family medical leave act when I said that it wasn't a reasonable Accommodation act what I mean by that is You actually have to be able to perform The essential functions of that position legal research and writing, you know, there's nothing she hasn't One of the responses I get my stuff in timely So there's no indication from either side that the taking the leave in any way was a factor in in her termination here If I may quickly your honor, I'd like to just address a couple outstanding issues in in the brief in terms of the The running for political office. I do think it's it's pretty clear that Regardless of the evidence and I've already talked about there is no evidence there of causation The the court is actually immune from suits here that both parties have discussed this mandatory Immunity and also discretionary immunity discretionary immunity arises under the California government code to 815 point two that that states the court can be held liable for for the vicariously liable for the acts of its employees If the employees are not already immune one of the immunities could be discretionary immunity under section 820 point two In their brief reply brief pages 14 and 15 Appellant it's we're not we're not bringing suit under 815 point two We are we are seeking a mandatory or direct liability, which requires a mandatory duty So all of the discretionary discussion in the briefs the US or rather the California Supreme Court case of Caldwell Not an issue in this case anymore, and it's pretty clear the cases we've cited Including the Clausen case including the Eldridge case that is actually directly on point discussing the statute That what is required is a mandatory duty an affirmative obligation It's not enough to just have shell in a statute It means we have to actually require the government to do something and 3203 doesn't do that. And then finally your honors I would Just point out that there that there is no evidence of any violation of title 7 or or the FIHA First of all, there's no mention in the brief of age at all So we can presume that the age has been dropped the only mention in the brief of gender is that she was a woman Okay, there's your prima facie case, but that's not enough We are prima facie case. Did they fire women but not men or do they have? almost all men at the in this staff attorney positions and Is there any absolutely not? In fact, they have mostly at least according to this record now I didn't I didn't to be clear. I didn't run the case below So all I have is what your honors have I was asked to do the oral argument at the record We have so you know the end so there are depositions in there from numerous female Staff staff attorneys. None of them have been terminated. Presumably it's heard that she talks about this particular and Adrian Majolisi, I believe her her name is the female staff attorney and the woman that Whose job she temporarily held in probate whose name is Stella Cardoza's I presume Stella is a is a female name, but you know, I should be careful with my presumptions But there is no evidence other than the Asian identity right and what the Asian identity all that establishes if you set aside the potentially racist connotation of the experts declaration that Asian Americans can't will vote for Asian Americans regardless of Qualifications for judges if we set that aside There's no evidence that any of these judges knew about Asian identity voting none No evidence that they've factored into their claim none So we would you know in the end judge Breyer got it. Absolutely, right? There is no evidence here. No evidence at all other than The fact that ms. Liu is Asian a Democrat and she requested intermittent leave to actually hold Or it's an old jury to find any type of discrimination and if your honors don't have any further questions, I'll submit Thank you counsel. Thank you The Reference to judge Garcia's testimony is in the record at er 16 Dash 63 and it's referred to page 7 of the appellant's opening brief at the top I would like to note that the it seems to me now. It's conceded that my client from December 10th 2004 notified the court that her husband was suffering from a terminal illness At that time she had her assignment to the appellate division had not become final that assignment did not begin officially until January 1st 2005 three weeks later the point your honors is that under the FMLA it is true that an employer can Transfer someone but not to a position that is more Demanding that has a more difficult job assignment and that's what happened here And this is an important point that I think they have been missed number one Most staff attorneys for the San Francisco Superior Court do not have to do any Research or writing as part of a job assignment and no and none of those staff attorneys have ever been required To pass some kind of litmus test or any kind of writing. I'm sorry They don't do research or writing do not most of them do none What is that that's in the record and what do they do? Oh, they do things like in the Access to the court department. They help help proper proper parties fill out forms and the family facilitator department They help out poor indigent people getting divorces fill out forms and department 212 they do an Administrative function of setting up a trial dates for courts in the I Mean I could go on your honor. It is in the record and In our reply brief we That's okay. You answer my question. All right, but it's that's undisputed Number one, so most staff attorneys don't do no research for writing number one number two before January 2005 my client 14 15 years of court Never have to had to do Research and writing where she was submitting bench memorandum to the other judges when she works in the municipal court in the limited jurisdiction courts She was primarily doing landlord-tenant matters and limited jurisdiction matters where her contacts with the court with judges were 100% face-to-face where it was verbal not written Reports to the judges on the basis of her research when she was working in the probate department She which was a year and a half before this new assignment She never did she rarely did research and writing the job was mostly doing handling ex parte applications and When she did research and writing for Judge Dearman, she always reported Orally verbally never in writing. So what happens on December 10th? She tells the court that her husband is suffering from a terminal illness and I'm starting January 10th Assigned for the first time in her career. She's been there 15 years the first time in the career She has an assignment not only where it's just research and writing where she doesn't do oral presentations to judges that she has to prepare written a Documents for the judges to review like I'm sure the bench memo that you gentlemen have But this is the first time she's ever had to do it number one and number two You ought to be winding up because you're three and a half minutes over time But the point is that that new transfer created a hardship and within the statutes under FMLA if an assignment creates a hardship is some violation of the statute and what else did the statute say It does and it also says that at the end of your leave period You're entitled to to return to an equivalent position that you had before notified the court of the medical Situation now all the positions that she had before December 10th None of them required her to do any research and writing. Okay counsel your You made that point. Well, that's it. Thank you counsel Lou versus Superior Court is submitted
judges: Fletcher B. , Kleinfeld, Duffy